IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ZEBULON WENDT,

    Plaintiff,

v.                               Civil Action No. 3:16cv849

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S MOTION TO DISMISS (ECF No. 7). For the reasons set forth below, the motion will be granted and the action will be dismissed for lack of subject matter jurisdiction.

## INTRODUCTION

Zebulon Wendt ("Wendt") filed this action under the Federal Torts Claim Act ("FTCA") against the United States alleging negligent conduct by the United States Marshals Service ("USMS") while Wendt was in their custody for a court appearance at the United States District Court in Richmond, Virginia. The United States seeks dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND

On April 23, 2015, United States Immigration and Customs Enforcement arrested Wendt on federal charges for possession of obscene material, remanded him to the custody of the USMS, and transported him to the Pamunkey Regional Jail ("PRJ") in Hanover County, Virginia. (ECF No. 8-1 ¶ 4.) Wendt was housed at the PRJ pursuant to an Intergovernmental Agreement ("IGA") between the USMS and the PRJ that the USMS executed under its statutory discretion to enter into such agreements.[1] (Id. ¶ 5.)

The IGA allows the USMS to house federal detainees with the PRJ at its facility. (ECF No. 8-4 at 3.) The agreement requires that the PRJ "shall accept and provide for the secure custody, safekeeping, housing, subsistence and care of Federal detainees in accordance with all state and local laws, standards, regulations, policies and court orders applicable to the operation of the Facility." (Id.) The IGA further requires the PRJ to "provide transportation and escort guard services for Federal detainees housed at its facility to and from the U.S. Courthouse." (Id. at 1, 7.) USMS does not supervise PRJ's day-to-day operations but retains the right to inspect the facility at its discretion. (Id. at 3, 12.)

---

[1] See 18 U.S.C. §§ 4002, 4013.

On July 16, 2015, PRJ officers transported Wendt from the PRJ to the United States District Court in Richmond, Virginia for an initial appearance. (ECF No. 8-1 ¶ 6.) PRJ officers parked within the sally port at the courthouse, escorted Wendt into the elevator, then took him to the USMS processing area within the USMS secure cellblock of the courthouse. (Id. ¶ 7.) At the time, Wendt was wearing leg irons, a belly chain, a black box, and handcuffs. (Id. ¶¶ 6-7.) PRJ officers then transferred custody of Wendt to USMS deputies, who, under normal USMS practices, would have removed Wendt's handcuffs, black box, and belly chain, but not his leg irons, in preparation for the initial appearance. (Id. ¶ 8; ECF No. 8-9, ¶¶ 5-6.) USMS deputies would then escort Wendt from the USMS processing area on the second floor of the courthouse to the courtroom for the initial appearance (ECF No. 8-1, ¶ 9; ECF No. 8-9, ¶ 6) and would have waited in the courtroom during the initial appearance. (Id.) Wendt does not contend that there was any deviation from these standard practices.

After Wendt's initial appearance, USMS deputies escorted him out of the courtroom, onto the elevator, and back to the USMS processing area on the second floor. (Id.) USMS then transferred custody of Wendt to PRJ officers within this area. (ECF No. 8-1 ¶ 10, 8-9 ¶ 7.) Following normal protocol, PRJ officers placed handcuffs, a black box, and a belly chain back

3

on Wendt, and then escorted him down the hall and onto the second floor elevator for transport to the basement and onto the PRJ van. (ECF No. 8-1 ¶ 10, 8-9 ¶ 6, 7.)

The incident that forms the basis for Wendt's claim occurred in the elevator while Wendt was in the custody of PRJ officers. (ECF No. 8-1, ¶ 10.) According to the PRJ Incident Report, dated July 16, 2015, PRJ Officers Walker and Overton "escorted Plaintiff to the elevator inside the federal courthouse to load him into the transport van." (ECF No. 8-8.) Wendt "stepped over the threshold at the elevator door and his leg iron got caught in the track." (ECF No. 8-7.) Wendt fell and hit his head on the metal elevator floor, suffering injuries to his forehead, nose, and left ankle. (Id., ECF No. 8-8.) No USMS deputy was reported present at the time the alleged incident occurred. (ECF No. 8-9 ¶ 9.) After receiving notice from Court Security Officers of the alleged incident, USMS deputies arrived at the site of the incident and assisted PRJ officers in administering first aid to Wendt. (ECF No. 8-8.) Wendt was escorted to the PRJ van for transport back to PRJ a short time thereafter. (Id.) He received medical treatment at PRJ the same day. (Id.)

**PROCEDURAL BACKGROUND**

On December 2, 2015, Wendt properly filed an administrative claim with the Department of Justice seeking $100,000 in damages. (ECF No. 12-2.) The Department of Justice responded on December 10, 2015, acknowledging receipt of the administrative claim and seeking further evidence to support it. (Id.) Wendt's counsel provided additional documents to the Department of Justice on December 14, 2015 and March 23, 2016. (ECF No. 17.) From the record, the disposition of Wendt's administrative claim is unclear.

On October 19, 2016, Wendt filed a FTCA action, 28 U.S.C. § 1364(b), §§ 2671-2800, against the United States, which responded on February 23, 2017 with a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

**LEGAL STANDARD**

A defendant may challenge subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) in two separate ways. See Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009) (citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). First, a defendant may attack the sufficiency of the complaint's jurisdictional allegations. Id. In the alternative, a defendant may attack the veracity of the jurisdictional allegations themselves. Id. Under the latter approach, a court may consider

evidence outside the pleadings to determine whether facts exist to support subject matter jurisdiction. <u>Williams v. United States</u>, 50 F.3d 299, 304 (4th Cir. 1995). The United States is proceeding, in this motion, under the alternative approach and has submitted several affidavits and documents in support of its motion.

"The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1) because the party who sues the United States bears the burden of pointing to . . . an unequivocal waiver of immunity." <u>Id</u>. (internal citations omitted). "Sovereign immunity can be waived only by the sovereign; the circumstances of this waiver must be scrupulously observed and not expanded by the courts." <u>Kokotis v. United States Postal Serv.</u>, 223 F.3d 275, 278 (4th Cir. 2000). All ambiguities must be resolved in favor of the sovereign. <u>Robb v. United States</u>, 80 F.3d 884, 887 (4th Cir. 1996). In the absence of a waiver of sovereign immunity, the Court lacks the power to hear the case, and the claim must be dismissed. <u>United States v. Testan</u>, 424 U.S. 392, 399 (1976).

## DISCUSSION

The United States asserts that Wendt was under the custody and supervision of independent contractors at the time of the incident in which he was injured and that the United States has

not, in that circumstance, waived its sovereign immunity from suit.

Generally, the United States, as sovereign, is "immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." Lehman v. Nakshian, 453 U.S. 156, 160 (1981); Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). The FTCA grants a limited waiver of sovereign immunity for torts committed by employees of a federal agency, or their agents, acting in the scope of their employment. See 28 U.S.C. §§ 1346(b), 2671, 2674. Importantly, the FTCA constrains the term "federal agency" to explicitly exclude "any contractor with the United States." § 2671. Thus, Congress did not waive the United States' sovereign immunity for injuries caused by the actions of independent contractors performing work for the United States. See United States v. Orleans, 425 U.S. 807, 814 (1976); Robb, 80 F.3d at 887.

As a waiver of sovereign immunity, the FTCA is to be strictly construed and all ambiguities must be resolved in favor of the sovereign. Robb, 80 F.3d at 887. Consequently, the independent contractor exception to the waiver of sovereign immunity has been construed broadly. Id. Whether a person is an

7

independent contractor or an employee is determined by federal law. Id.; see Logue v. United States, 412 U.S. 521, 528 (1973).

The analytical framework is well-settled for determining whether, for the purposes of the FTCA, a person is a federal employee or agent, or an independent contractor for the United States. Under the Supreme Court instructions set out in Logue v. United States, the "critical factor" for distinguishing an employee or agent from an independent contractor is whether the United States has the power "to control the detailed physical performance of the contractor." 412 U.S. at 528; see also Orleans, 425 U.S. at 814. The Fourth Circuit has interpreted Logue's "control test" to mean that sovereign immunity is waived only where the United States "actually supervises the 'day-to-day operations' of the endeavor." Williams, 50 F.3d at 306. Furthermore, in Wood v. Standard Products Co., 671 F.2d 825, 832 (4th Cir. 1982), the Fourth Circuit noted that government supervision of day-to-day operations must relate to "the primary activity contracted for and not the peripheral, administrative acts relating to such activity."

In Williams, the Court of Appeals found that the United States did not waive sovereign immunity in a slip-and-fall case where the United States had contracted with a third-party, Meridian, to provide maintenance services for a federal facility. Id. In making that determination, the Court of

8

Appeals looked to the conduct of the parties rather than to the terms of the contract. The Court of Appeals concluded that Meridian was an independent contractor because Meridian was responsible for the daily operations of the facility and the United States neither supervised nor controlled the day-to-day operations or the custodial duties. Id. The Court of Appeals further cited, with approval, cases from several jurisdictions standing for the proposition that certain contractual safeguards, including the right to inspect an independent contractor's work or require adherence to United States directives and standards, does not convert an independent contractor into an employee or agent of the United States. Id. at 306-07.

This principle applies with equal force to the IGA at issue, as this Court held in Johnson v. United States, 2006 WL 572312, at *4 (E.D. Va. Mar. 7, 2006). In Johnson, an intergovernmental contract between USMS and Virginia Peninsula Regional Jail ("VPRJ") required that VPRJ provide for the "housing, safekeeping, and subsistence of federal prisoners." While USMS retained the right to perform "periodic inspections" of the VPRJ facility, the Court held that this contractual safeguard did not "nullify the general rule that the United States is not responsible for the actions of an independent contractor." Id. The Court then applied the Williams "control"

9

test and concluded, by examining both the contract and the undisputed facts between the parties, that VPRJ was an independent contractor because USMS did not supervise VPRJ's day-to-day operations. Id.

It is clear that PRJ, including Officers Overton and Walker, are independent contractors and not federal employees or agents. USMS contracted with PRJ for the "custody, safekeeping, housing, subsistence and care of Federal detainees in accordance with all state and local laws, standards, regulations, policies and court orders applicable to the operation of the Facility." (ECF No. 8-4, at 3.) The IGA further requires that PRJ "provide transportation and escort guard services for Federal detainees housed at its facility to and from the U.S. Courthouse." (Id. at 7.) Similar to the intergovernmental agreement in Johnson, the IGA allows periodic inspections of the Facility by the United States but places responsibility on PRJ for its day-to-day operations. As in Williams and Johnson, the IGA lacks a provision empowering the United States to control PRJ's "detailed physical performance" in the execution of the IGA. Nothing in the IGA suggests that the PRJ falls under the FTCA definition of "employee of the government." Thus, PRJ and its employees are independent contractors of the United States for the purposes of the FTCA.

Furthermore, as the United States aptly points out and Wendt does not dispute, at the time of the incident Wendt was in the custody of PRJ Officers Overton and Walker. No USMS personnel were involved in the incident. Nor did any USMS deputy supervise the actions of Officers Overton and Walker after they resumed control over Wendt when the initial appearance concluded and Wendt was returned to the custody of those PRJ officers.

Because Wendt was under the custody of independent contractors at the time of the incident, the United States did not waive sovereign immunity under the FTCA. Accordingly, this Court lacks subject matter jurisdiction. The DEFENDANT'S MOTION TO DISMISS (ECF No. 7) will be denied without prejudice.

In response to the DEFENDANT'S MOTION TO DISMISS (ECF No. 7), Wendt filed a motion seeking to join the Pamunkey Regional Authority and Officers Overton and Walker as defendants. As stated above, these parties are independent contractors and no colorable claim under the FTCA may be made against them. Nor would joining these parties as defendants disturb the conclusion that this Court lacks subject matter jurisdiction. Under that circumstance, PLAINTIFF'S MOTION TO JOIN PAMUNKEY REGIONAL AUTHORITY AND OFFICERS OVERTON AND WALKER AS DEFENDANTS IN THE ABOVE-STYLED MATTER (ECF No. 13) must be denied.

## CONCLUSION

For the foregoing reasons, the DEFENDANT'S MOTION TO DISMISS (ECF No. 7) will be granted and the action will be dismissed without prejudice, and PLAINTIFF'S MOTION TO JOIN PAMUNKEY REGIONAL AUTHORITY AND OFFICERS OVERTON AND WALKER AS DEFENDANTS IN THE ABOVE-STYLED MATTER (ECF No. 13) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 17, 2017